UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRIAN ARCENEAUX AND
COLETTE ARCENEAUX, ON
BEHALF OF THEIR MINOR
CHILD, "REBEKKA A."

CIVIL ACTION

VERSUS

NO.16-6554

ASSUMPTION PARISH SCHOOL
BOARD AND NILES RICHE

SECTION "S"

ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED,** and plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendants' request for attorneys' fees is **DENIED**.

BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendants, the Assumption Parish School Board ("APSB") and Niles Riche, the principal of Assumption High School ("AHS"). Defendants argue that plaintiffs, Brian and Colette Arceneaux, who filed this suit on behalf of their minor daughter, Rebekka A., cannot prevail on their claim that APSB and Riche discriminated against Rebekka on the basis of gender in violation Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States when Rebekka was removed from the cheerleading squad for engaging in unacceptable behavior while in her cheerleaders uniform at a school function. Defendants also argue that plaintiffs cannot prove that they retaliated against Rebekka in violation of Title IX by subjecting her to drug testing because she was never tested.

AHS is a high school under the jurisdiction of the APSB, an entity that receives federal funding for the operation and benefit of AHS. Rebekka entered AHS as a freshman in 2013, and was a member of the varsity cheerleading squad her freshman, sophomore and junior years.

Lynn Daigle, the AHS cheerleading sponsor, is responsible for implementing rules for eligibility to participate in cheerleading. In 2015, Rebekka and her mother, Colette, both signed a copy of the Application for Cheerleading Tryouts for the upcoming 2015-2016 school year. Included in the application packet were copies of the AHS Cheerleader and Mascot Method of Selection and Eligibility Sheet, AHS Cheerleaders Rules and Regulations, and AHS Cheerleaders/Mascot Discipline System. The AHS Cheerleading/Mascot Discipline System states that a cheerleader would be dismissed from the squad for involvement "in any unacceptable behavior while in uniform or at a school function" or "if disciplinary action results in a suspension." It also states that "[a] student WILL NOT be allowed to try out for the next year's squad if that student has been dismissed from the squad for disciplinary measures during the school year."

The AHS Student Athlete Handbook applies to all sports at AHS. Plaintiffs claim that cheerleading was a sport at AHS. The AHS Student Athlete Handbook provides that for a first suspension, a student is prohibited from participating in an athletic event that occurs during the term of suspension, and that "[a] suspension offense of a serious nature could result in the dropping of a student from the athletic team . . . at the discretion of the coach, athletic director, and/or principal." It also states that for a second suspension a student athlete "would be ineligible to participate in any sport for the remainder of that school year[,] with the exception of being allowed to participate in "any type of spring training or tryout sessions for the following school year."

Further, the AHS Student Athlete Handbook provides that "[e]ach head coach is responsible for compiling a set of eligibility rules and polices for his or her particular sport."

In the fall of 2015, K.T., a member of the AHS cheerleading squad, was suspended from school for fighting, but she was not dismissed from the squad. Daigle and Monique Meyer, the junior varsity cheerleading sponsor, met with the cheerleaders and informed them that the cheerleading disciplinary policy had been changed to require two suspensions for dismissal from the squad. Rebekka testified at her deposition that, at this meeting, Daigle told the cheerleaders that cheer was now considered a sport at AHS. Daigle testified at her deposition that she did not recall saying that, and Daigle, along with Riche; Sydney P. Acosta, AHS's Athletic Director; and Joey L. Comeaux, the APSB's representative, all testified at their depositions that cheerleading was not considered a sport at AHS. Daigle and Riche testified that Daigle changed the cheerleading disciplinary suspension policy at Riche's request because he sought more uniformity in such policies among school activities. The members of the 2015-2016 AHS cheerleading squad were not provided with written documentation of this change. The AHS Cheerleaders/Mascot Discipline System sheet that was handed out in March or April 2016 in connection with tryouts for the 2016-2017 school year reflects that it would require two suspensions for a cheerleader to be removed from the squad. However, the provision stating that a cheerleader would be dismissed from the squad for "unacceptable behavior while in uniform or at a high school function" remained unchanged.

On February 18, 2016, the AHS cheerleading squad, including Rebekka, performed at a girls' basketball playoff game in Lafayette, Louisiana. The school bus on which the cheerleading squad was riding stopped at a gas station on the return trip to AHS. Rebekka and another cheerleader left the bus to use the restroom. While in the restroom, the girls lifted their uniform

3

skirts to expose their underwear-clad buttocks, and the other girl took a photograph on her cellular telephone. The other girl sent the photograph to the Weekend Schemers for it to be posted on Snapchat and viewed by all of the Weekend Schemers's followers. The Weekend Schemers maintains a Snapchat account that posts pictures provided by third parties and bills itself as "[t]he authority on college life, partying, and most importantly scheming." Many of the photographs featured on Weekend Schemers's Snapchat account depict young women exposing their buttocks. On February 19, 2016, a third girl notified Daigle about the incident. Daigle discussed the matter with Meyer and then reported the incident to Riche.

On February 19, 2016, Riche and Heath Zeringue, AHS's disciplinarian, called Rebekka to the school office and questioned her about the incident. Rebekka truthfully recounted the events and provided a handwritten statement to Zeringue, who determined that a three-day in-school suspension was an appropriate punishment for Rebekka's committing what he considered to be "a serious offense that is not otherwise defined in AHS's code of conduct." Later that day, the Arceneauxs and Rebekka met with Riche, Daigle and Meyer who informed them that Rebekka would receive the following discipline as a result of the event: (1) a three day in-school suspension from February 22-24, 2016; (2) she would not be permitted to attend the Sadie Hawkins dance scheduled for the weekend prior to the commencement of her suspension; (3) she would be dismissed from the cheerleading squad for the remainder of the school year; and, (4) she would not be permitted to try out for the cheerleading squad for her senior year, the 2016-2017 school year.

On March 4, 2016, the Arceneauxs appealed Rebekka's suspension. On March 15, 2016, AHS responded that the appeal would not be considered because it was untimely under the rules

set forth in the APSB Student Code of Conduct. On April 7, 2016, the Arceneauxs filed a formal grievance with the APSB.

On April 8, 2016, plaintiffs' counsel wrote to Riche and Tibby Martinez, the superintendent of the APSB, stating that Rebekka's punishment violated AHS's policy governing the discipline of student athletes and requested that they remedy the situation. The letter stated that, pursuant to the AHS Student Athlete Handbook, Rebekka could not be prohibited from trying out for the cheerleading squad for the 2016-2017 school year because she had only one suspension during her time at AHS.

On April 27, 2016, the APSB responded to the Arceneauxs' formal grievance stating that Rebekka's conduct violated the AHS Cheerleading/Mascot Discipline System that Colette and Rebekka signed in 2015. According to the APSB, Rebekka's dismissal from the cheerleading squad for the 2015-2016 school year and the ban prohibiting her from trying out for the 2016-2017 school year was warranted under these rules.

On May 19, 2016, the Arceneauxs filed this suit on Rebekka's behalf alleging that the discipline imposed on Rebekka as a result of the February 18, 2016, incident constituted gender discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, which is actionable under 42 U.S.C. § 1983. The Arceneauxs allege that cheerleading was considered a sport for the 2015-2016 school year, and the policies regarding suspensions outlined in the AHS Student Athlete Handbook are more lenient than those contained in the AHS Cheerleading/Mascot Discipline System. They claim that the discrepancy in the disciplinary policies resulted in Rebekka's punishment being harsher than that received by male student athletes for similar behavior, which amounted to gender discrimination. The Arceneauxs also bring

a Title XI retaliation claim alleging that, in April 2016, Rebekka was called into the school office for random drug testing after she was removed from the cheerleading squad in retaliation for their complaints about the discipline imposed on Rebekka.  Rebekka was not tested because the school officials realized after calling her in that she was no longer a cheerleader.  Defendants have moved for summary judgment arguing that the Arceneauxs cannot prevail on their gender discrimination or retaliation claims.

## ANALYSIS

### I.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986).  In determining whether there is a dispute as to a material fact, the court considers all of the evidence in the record and draws all reasonable inferences in favor of the nonmoving party, but does not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 120 S.Ct. 2097, 2110 (2000). [1]

---

[1] Defendants captioned their motion as one for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure or for summary judgment. "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." Chauvin v. State Farm & Cas. Co., 495 F.3d 232, 237 (5th Cir. 2007). Under Rules 12(b)(6) and 12(c) the court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)); see also Bosarge v. Miss. Bureau of Narcotics, 796 F.3d 435, 440 (5th Cir. 2015) ("In considering a motion for judgment on the pleading under Rule 12(c), the court is generally limited to the contents of the pleadings, including the attachments thereto.") (quotations omitted).  Because both plaintiffs and defendants submitted evidence outside of the pleadings, such as

## II.     Gender Discrimination under Title IX and the Equal Protection Clause

Plaintiffs allege that the APSB violated Title IX and that the APSB and Riche violated the Equal Protection Clause because they failed to ensure that AHS's disciplinary rules pertaining to student athletes were uniformly applied to male and female athletes.  They claim that Rebekka was subjected to gender discrimination because she was disciplined under a rule applicable only to cheerleaders, which is typically an all-female sport. Defendants argue that plaintiffs' Title IX and Equal Protection claims should be dismissed because plaintiffs cannot demonstrate that Rebekka was treated differently than similarly situated students who engaged in the same activity and were subject to the same disciplinary rules.

### A.     Gender Discrimination under Title IX

Title IX provides, in pertinent part, that:

> No person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).  A plaintiff may bring a Title IX claim for damages or injunctive relief against an institution or program receiving federal funds, but the statute does not authorize suits against school officials, teachers or other individuals. Fitzgerald v. Barnstable Sch. Comm., 129 S.Ct. 788, 795-96 (2009).  "Congress modeled Title IX after Title VI of the Civil Rights Act of 1964, . . . and passed Title IX with the explicit understanding that it would be interpreted as Title VI was." Id. at 797.

---

affidavits and deposition testimony, which the court considered, the motion is treated as a motion for summary judgment.

To prevail on a Title IX claim, a plaintiff must prove that: (1) the defendant engaged in intentional discrimination based on gender; and, (2) the defendant received federal financial assistance. 20 U.S.C. § 1681; see also Chance v. Rice Univ., 984 F.2d 151, 153 (5th Cir. 1993).

### B. Gender Discrimination under the Equal Protection Clause

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; Monell v. Dep't of Soc. Servs., 98 S.Ct. 2018 (1978). Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of Hous., 185 F.3d 521, 525 n. 3 (5th Cir. 1999). To pursue a claim under section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and; (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. Sw. Bell Tel., LP v. City of Hous., 529 F.3d 257, 260 (5th Cir. 2008); see also West v. Atkins, 108 S.Ct. 2250, 2255-54 (1988).

The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To prevail on a claim of gender discrimination under the Equal Protection Clause a plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." Priester v. Lowndes Cnty., 354 F.3d 414, 424 (5th Cir. 2004) (quoting Taylor v. Johnson, 257 F.3d 470 (5th Cir. 2001)); see also Hinojosa v. Martinez, 53 F.3d 1281 (5th Cir. 1995). "Discriminatory intent" means "'that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'" Id. (quoting Taylor, 257 F.3d at 473).

### C. Analyzing Gender Discrimination Claims under Title IX and the Equal Protection Clause

Because the laws are similar, courts use the jurisprudence developed under Title VI and Title VII to interpret Title IX. See Yusuf v. Vassar Coll., 35 F.3d 709, 714 (2d Cir. 1994); Bowers v. Bd. of Regents of the Univ. Sys. of Ga., 509 Fed. Appx. 906, 910 (11th Cir. 2013); Richardson v. Loyola Coll. of Md., Inc., 167 Fed. Appx. 223, 224 (D.C. Cir. 2005); Middlebrooks v. Univ. of Md., 166 F.3d 1209 (4th Cir. 1999). Further, § 1983 actions challenging gender discrimination under the Equal Protection Clause are analyzed in the same manner as Title VII and Title IX cases. See Giles v. Shaw Sch. Dist., 655 Fed. Appx. 998, 1002 (5th Cir. 2016) (citing Lee v. Conecuh County Bd. of Educ., 634 F.2d 959, 962 (5th Cir. 1981)).

A plaintiff bringing a claim under Title IX or §1983 for a violation of the Equal Protection Clause, may use either direct or circumstantial evidence to prove that she was subjected to intentional discrimination. Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994). "'Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption.'" Id. at 328-29 (quoting Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993)). "[D]irect evidence includes any statement or written document showing a discriminatory motive on its face." Id. at 329 (citations omitted). If a "plaintiff presents direct evidence of discrimination, 'the burden of proof shifts to the [defendant] to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C., 778 F.3d 473, 475 (5th Cir. 2015) (quoting Brown, 989 F.2d at 861).

When there is no direct evidence of intentional discrimination, a plaintiff must prove her case by inference using the McDonnel Douglas burden-shifting analysis. Id. at 475. First, the plaintiff must establish a *prima facie* case of discrimination, which creates a presumption that the

9

defendant unlawfully discriminated against the plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 101 S.Ct. 1089, 1094 (1981). If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Buisson v. Bd. of Supervisors of the La. Cmty. and Tech. Coll. Sys., 592 Fed. Appx. 237, 2014 WL 5804127, at *4 (5th Cir. 2014) (citing McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007)). "If the [defendant] articulates a legitimate reason for the adverse . . . action, 'the plaintiff then bears the ultimate burden of proving that the [defendant's] proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose.'" Id. (quoting McCoy, 492 F.3d at 556).

To establish a *prima facie* case under the McDonnel Douglas framework, a plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she met the defendant's qualifications for participation in the activity; (3) she suffered an adverse action; and (4) that others not in her protected class received more favorable treatment under similar circumstances. Buisson, 592 Fed. Appx. at 243 (citing McCoy, 492 F.3d at 556). The APSB argues that plaintiffs cannot prevail on their Title IX claim because they do not have examples of other students subject to the same disciplinary rules as Rebekka that were not in her protected class and treated more favorably. To counter this argument, plaintiffs present many examples of male students at AHS who exhibited behavior similar to Rebekka's that were allegedly not disciplined as harshly as she was. However, "the McDonnel Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." Portis, 34 F.3d at 328 (quoting Trans World Airlines v. Thurston, 105 S.Ct. 613, 621-22 (1984)).

Plaintiffs have presented what they allege is direct evidence of gender discrimination. Namely, there is a disciplinary policy applicable to all student athletes and a separate policy that

is applicable only to cheerleaders. Plaintiffs claim that Rebekka was disciplined under the old cheerleading policy that required only one suspension for dismissal from the squad, which is harsher than the policy applicable to all student athletes that calls for dismissal from an athletic team after two suspensions. Also, the cheerleading disciplinary policy has a provision that requires dismissal from the squad for engaging in unacceptable behavior while in the cheerleading uniform or at a school function. The unacceptable behavior policy is not included in the AHS Student Athlete Handbook. Plaintiffs claim that the discrepancies in the policies amounts to gender discrimination because cheerleading is typically an all-female sport. This direct evidence of gender discrimination renders inapplicable the McDonnel Douglas burden-shifting analysis and makes it unnecessary to analyze the purported examples of disparate treatment.

    The policies related to suspensions are different in the written version of AHS Cheerleaders/Mascot Discipline System applicable to the 2015-2016 school year, and the AHS Student Athlete Handbook. The cheerleading disciplinary policy calls for removal from the squad after one suspension, whereas the AHS Student Athlete Handbook requires two suspensions to be removed from an athletic team. However, this discrepancy is irrelevant because Rebekka was not removed from the cheerleading squad under the outdated suspension policy. Daigle, Riche and Rebekka all testified that, at the time Rebekka was removed from the cheerleading squad, the cheerleading disciplinary policy regarding suspensions had been updated to require two suspensions for removal. This change was made because Riche sought more uniformity in suspension policies among school activities. Therefore, there is no evidence of intentional discrimination on the basis of gender with respect to the cheerleading suspension policy because it was the same as the suspension policy found in the AHS Student Athlete Handbook at the relevant time.

Further, Rebekka was not removed from the cheerleading squad due to her suspension. Daigle and Riche testified that Rebekka was dismissed from the cheerleading squad for violation of the rule of engaging in unacceptable behavior while in her uniform, which Rebekka admitted at her deposition. Plaintiffs contend that this rule is evidence of intentional gender discrimination because cheerleading is an all-female sport and the rule holds cheerleaders to a higher behavioral standard than members of other athletic teams.

Daigle and Riche testified that Daigle, as the cheerleading sponsor, is responsible for setting the rules applicable to cheerleading. The AHS Student Athlete Handbook states that the head coach of each sport "is responsible for compiling a set of eligibility rules and polices for his or her particular sport." The AHS Cheerleading/Mascot Discipline System is Daigle's statement of the eligibility rules and policies for participation in cheerleading. There is no evidence in the record that Daigle instituted her particular set of rules, including the unacceptable behavior rule, with the intention to discriminate on the basis of gender.

Indeed, Daigle's rules for participating in cheerleading applied to both males and females because cheerleading is a co-educational activity. The Application for Cheerleading Tryouts specifically anticipated that males might participate in cheerleading by stating that the parent is giving permission for his or her "daughter/son" to participate. Riche testified at his deposition that males have been on the AHS cheerleading squad. Presumably, the cheerleading disciplinary policy regarding unacceptable behavior would have been applied equally to male cheerleaders. Thus, the policy is not intentionally discriminatory on the basis of gender. The lack of there being a male cheerleader at the present time at AHS does not change the analysis.

Thus, there is no evidence that Rebekka was disciplined under a policy applicable only to females that was intentionally discriminatory on the basis of gender. Defendants' motion for

summary judgment is GRANTED and plaintiffs' Title IX and Equal Protection Clause discrimination claims are DISMISSED WITH PREJUDICE.

## III.  Retaliation under Title IX

Plaintiffs argue that Rebekka's being called for drug testing after she was dismissed from the cheerleading squad was done in retaliation for their appealing Rebekka's suspension and filing a formal grievance with the APSB.  Defendants argue that this claim must be dismissed because the Arceneaux's did not engaged in a protected activity and Rebekka did not suffer an adverse consequence.

Title IX's implementing regulations prohibit the recipient of federal funds from retaliating against any individual who makes a complaint or participates in an investigation under Title IX. 34 C.F.R. § 100.7(e) ("No recipient [of federal funds] . . . shall intimidate, threaten, coerce, or discriminate against any individual . . . because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title IX]."). To establish a *prima facie* case of unlawful retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered a material adverse action; and, (3) that a causal link exists between the protected activity and the adverse action. Collins v. Jackson Pub. Sch. Dist., 609 Fed. Appx. 792, 795 (5th Cir. 2015).

Plaintiffs cannot prevail on their retaliation claim because Rebekka did not suffer a material adverse action.  Plaintiffs claim the adverse action was Rebekka's being called to the school office for random drug testing after she was dismissed from the cheerleading squad.  However, they admit that Rebekka was not subjected to the testing when the school officials realized that Rebekka was no longer a cheerleader.  Walking to the school office is not a material adverse action.

Therefore, defendants are entitled to summary judgment on plaintiffs' Title IX retaliation claim, and that claim is DISMISSED WITH PREJUDICE.[2]

## IV.     Defendants' Request for Attorneys' Fees

Defendants move for attorneys' fees under 42 U.S.C. § 1988(b), which provides that, in an action brought under § 1983 or Title IX, "the court, in its discretion, may allow the prevailing party, . . ., a reasonable attorney's fee . . ."  "[Section] 1988 authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Fox v. Vice, 131 S.Ct. 2205, 2213 (2011) (quotation omitted).  The court "review[s] frivolity by asking whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful." United States v. State of Miss, 921 F.2d 604, 609 (5th Cir. 1991) (citations omitted).  Important factors in determining frivolity are: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial. Id.

Plaintiffs did not establish a *prima facie* case and a trial was not held.  There is no information in the record regarding whether defendants failed to engage in a good faith effort to settle.  However, plaintiffs' case was not frivolous because it is reasonable that they believed Rebekka was disciplined under a system that appears to be discriminatory.  Therefore, defendants' motion for attorneys' fees is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED,** and plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

---

[2] Because there was no material adverse action, there is no need to discuss whether plaintiffs engaged in a protected activity.

**IT IS FURTHER ORDERED** that defendants' request for attorneys' fees is **DENIED**.

New Orleans, Louisiana, this  10th  day of March, 2017.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**